T.C. Summary Opinion 2012-91

UNITED STATES TAX COURT

FREDERICK T. CHAMBERS AND JANICE K. CHAMBERS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1093-10S.                    Filed September 12, 2012.

Frederick T. Chambers and Janice K. Chambers, pro se.

Ashley D. Money, for respondent.

SUMMARY OPINION

PARIS, Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated December 15, 2009, respondent determined deficiencies in petitioners' joint Federal income tax of $5,433, $10,076, and $4,133 for 2005, 2006, and 2007, respectively. Respondent also determined section 6662[1] accuracy-related penalties of $1,086.60, $2,015.20, and $826.60 for 2005, 2006, and 2007, respectively. After concessions by the parties,[2] the issues for decision are: (1) whether petitioners may deduct losses from their rental real estate activities under the passive activity loss rules in section 469, and (2) whether they are liable for accuracy-related penalties under section 6662(a).

<u>Background</u>

Some of the facts are stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Tennessee when their petition was filed.

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code in effect for tax years at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Respondent concedes an error in the notice of deficiency. The correct Federal income tax deficiencies are $2,865, $9,613, and $4,133 for 2005, 2006, and 2007, respectively; and the correct amounts of penalties under sec. 6662 are $573, $1,922.60, and $826.60 for 2005, 2006, and 2007, respectively. Petitioners concede the inclusion of $7,487 of cancellation of indebtedness income and the disallowance of itemized deductions of $12,316 for 2006. Adjustments to itemized deductions for 2005 and 2007 are computational.

During 2005, 2006, and 2007, the tax years at issue, Mr. Chambers worked as a full-time civilian employee for the Department of the Navy (Navy). The Navy paid Mr. Chambers for 2,080 hours of work, which included 208 hours of annual leave, 104 hours of sick leave, and 88 hours of holiday leave. After reducing his 2,080 hours for annual, sick, and holiday leave, Mr. Chambers worked 1,680 hours each year at issue.

Mrs. Chambers also worked as a full-time civilian employee for the Navy during each year at issue. In addition to her full-time employment she worked part time for Dillard's, Inc., in 2005 and part time for Macy's, Inc., in 2005 and 2006.

Petitioners' Properties

During the years at issue petitioners owned a single-family rental property in San Diego, California. Petitioners were also responsible for the rental real estate activities of CMB Capital Investments, LLC (CMB Capital), a Tennessee limited liability company (LLC) in which Mr. Chambers owned a 33% interest. CMB Capital had three equal members.

CMB Capital was organized as a member-managed LLC with the purpose of investing in real estate. CMB Capital owned four properties in Tennessee during 2005 and eight during 2006 and 2007. Only three of the properties were rented in 2005, and four were rented in 2006 and 2007.

On their 2005, 2006, and 2007 Federal income tax returns, petitioners reported rental real estate losses of $8,901, $25,980, and $33,410, respectively. The losses combined petitioners' rental real estate losses from the San Diego property, which were $11,092, $15,405, and $15,907 for 2005, 2006, and 2007, respectively, with Mr. Chambers' share of CMB Capital passive income and losses. Petitioners reported adjusted gross income (AGI) of $153,955, $150,428, and $146,993 for 2005, 2006, and 2007, respectively.

In a recomputation of petitioners' Federal income tax deficiencies, see supra note 2, respondent disallowed $8,901, $15,405, and $14,404 of petitioners' rental real estate losses for 2005, 2006, and 2007, respectively. Respondent recalculated petitioners' AGI as follows: $164,856 for 2005, $175,320 for 2006, and $164,900 for 2007.

Petitioners' Real Estate Logs

Petitioners submitted logs detailing the amount of time they purportedly spent on rental real estate activities. The logs, which petitioners prepared in connection with the Internal Revenue Service's audit of their returns, are based upon a review of rent receipt books, bank statements, spreadsheets for repairs, maintenance logs, and other activities associated with renting, such as collecting rent. Collecting rent, according to petitioners, involved the following: receiving

notification that the rent was available, traveling to pick up the rent or making arrangements with the renter to send a payment, receiving the payment, depositing the payment, and issuing a receipt.

The logs record 832 hours of real estate activities for 2005, 848 hours for 2006, and 936 hours for 2007. The hours combine time spent on the San Diego and CMB Capital properties by petitioners, subcontractors, and another member of CMB Capital, who was a painter and carpenter. Included in the log entries are: (1) three to four hours per month, per property, for collecting rent; (2) 385 hours in 2005 and 185 hours in 2006 of viewing foreclosure properties; and (3) 220 hours in 2007 of time spent at Lowe's and Home Depot. The logs do not record petitioners' prep time and phone calls related to their real estate activities.

Notice of Deficiency

On December 15, 2009, respondent issued a notice of deficiency to petitioners for 2005, 2006, and 2007. Petitioners timely filed a petition contesting the deficiencies, and a trial was held in Memphis, Tennessee, on June 6, 2011. Despite receiving an extension of time to file their answering brief until October 19, 2011, petitioners have failed to do so.

## Discussion

### I. Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving it incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving his entitlement to any deductions claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Under section 7491(a), the burden of proof may shift to the Commissioner if the taxpayer produces credible evidence with respect to any relevant factual issue and meets other requirements. Petitioners have not argued that section 7491(a) applies, and therefore the burden of proof remains on them.

### II. Passive Activity Losses

Section 469 generally disallows passive activity losses for any taxable year. A passive activity loss is defined as the excess of the aggregate losses from all passive activities for a taxable year over the aggregate income from all passive activities for that year. Sec. 469(d)(1). Passive activities include any trade or business in which the taxpayer does not materially participate, sec. 469(c)(1), or,

to the extent provided in regulations, any activity with respect to which expenses are allowable as a deduction under section 212, sec. 469(c)(6)(B).

Rental activity is generally treated as per se passive regardless of whether the taxpayer materially participates. Sec. 469(c)(2), (4). There are, however, two exceptions: (1) for real estate professionals under section 469(c)(7), and (2) for passive activity losses up to $25,000 under section 469(i).

A. Real Estate Professional

Under section 469(c)(7) rental activities of taxpayers in real property trades or businesses are not per se passive, but rather are treated as trades or businesses subject only to the material participation requirements of section 469(c)(1). A taxpayer qualifies as a real estate professional if: (1) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and (2) the taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates. Sec. 469(c)(7)(B). A taxpayer must satisfy both requirements of section 469(c)(7)(B) to qualify as a real estate professional. For taxpayers filing a joint return, either spouse may separately satisfy the real estate professional requirements. Id.

The first part of the definition of a real estate professional under section 469(c)(7)(B) requires that Mr. Chambers have performed more than one-half of his personal services in trades or businesses during the years at issue in real property trades or businesses in which he materially participated. See Moss v. Commissioner, 135 T.C. 365 (2010). "Personal services" means any work performed by an individual in connection with a trade or business, sec. 1.469-9(b)(4), Income Tax Regs., and a trade or business includes being an employee, see Fowler v. Commissioner, T.C. Memo. 2002-223.

Mr. Chambers was an employee of the Navy and worked at least 1,680 hours during each year at issue. In addition to working as an employee, Mr. Chambers claims that he managed the San Diego and CMB Capital rental properties for 832 hours in 2005, 848 hours in 2006, and 936 hours in 2007. Mr. Chambers' total personal services working hours for the years at issue are: 2,512 hours in 2005, 2,528 hours in 2006, and 2,616 hours in 2007. As a result, to meet the first part of the real estate professional definition, petitioners must show that Mr. Chambers spent more than one-half of 2,512 hours in 2005, 2,528 hours in 2006, and 2,616

hours in 2007 working in real property trades or businesses in which he materially participated.[3]

Before the Court may address the number of hours Mr. Chambers spent on real property trades or businesses, the Court must determine whether he may include his time spent on real estate activities for CMB Capital. Section 469(h)(2) provides that "Except as provided in regulations, no interest in a limited partnership as a limited partner shall be treated as an interest with respect to which a taxpayer materially participates." Therefore, there is a presumption of passive activity for taxpayers with interests in limited partnerships as limited partners. See Garnett v. Commissioner, 132 T.C. 368, 372 (2009). General partners, however, are excepted. See sec. 1.469-5T(e)(3)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988).

---

[3]Petitioners acknowledge that Mr. Chambers worked approximately 1,680 hours for the Navy each year at issue. Nonetheless petitioners maintain that Mr. Chambers satisfied the first part of the definition of a real estate professional because he spent 832 hours in 2005, 848 hours in 2006, and 936 hours in 2007 on real property trades or businesses. Because one-half of 1,680 is 840, the Court suspects that petitioners have misinterpreted sec. 469(c)(7)(B)(i) to require Mr. Chambers to spend more than one-half of his hours with the Navy on real property trades or businesses. As discussed above, the real estate professional definition combines a taxpayer's personal services for all trades or businesses, e.g., his hours spent as an employee and on rental properties, and requires more than one-half of the combined hours to be spent on real property trades or businesses.

In Garnett v. Commissioner, 132 T.C. at 372, the Court held that an interest in an Iowa LLC was not an "interest in a limited partnership as a limited partner" within the meaning of section 469(h)(2) or the regulations thereunder. The Court held that a member of an Iowa LLC, unlike a limited partner, was not prohibited by State law from participating in the partnership's business and, consequently, more closely resembled a general partner. Id. at 380. Accordingly, the special rules of section 469(h)(2) did not apply to an interest in an Iowa LLC. Id. at 381.

Mr. Chambers was a member of CMB Capital, an LLC that was organized in Tennessee. A member, under Tennessee law, may participate in the management of the LLC. Tenn. Code Ann. sec. 48-205-101(5) (2002). Moreover, according to its articles of organization, CMB Capital was member managed. Mr. Chambers was therefore not only allowed to participate in the management of CMB Capital by Tennessee law, but also, as a member manager, was required to do so by the articles of organization.

Furthermore, Mr. Chambers provided credible testimony that he managed the day-to-day operations of CMB Capital, which involved, among other things, overseeing CMB Capital's rental properties in Tennessee. Mr. Chambers therefore functioned more like a general partner of a limited partnership and, as a result, he comes within the general partner exception of section 1.469-5T(e)(3)(ii), Temporary

Income Tax Regs., <u>supra</u>. The Court concludes that the special rules of section 469(h)(2) do not apply to Mr. Chambers. Consequently, his time spent on real estate activities for CMB Capital is included in his calculation of hours performed in real property trades or businesses for purposes of section 469(c)(7)(B).

A taxpayer may use any reasonable means to establish his hours of participation. Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).[4] Reasonable means "may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries." <u>Id.</u> Although contemporaneous daily time reports, logs, or similar documents are not required, <u>see id.</u>, the Court has held that the regulations "concerning the records to be maintained by taxpayers * * * by no means allow a postevent 'ballpark guesstimate'", <u>Carlstedt v. Commissioner</u>, T.C. Memo. 1997-331 (citing <u>Speer v. Commissioner</u>, T.C. Memo. 1996-323).

---

[4]Material participation pursuant to sec. 469(c)(7) has the same meaning as under sec. 1.469-5T, Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988). Sec. 1.469-9(b)(5), Income Tax Regs.

Petitioners stipulated that Mr. Chambers spent at least 1,680 hours working for the Navy during each year at issue. Thus, in order to satisfy the requirements of section 469(c)(7)(B)(i) petitioners must show that Mr. Chambers devoted more than 1,680 hours to his rental real estate businesses.[5] See Anyika v. Commissioner, T.C. Memo. 2011-69. As discussed above, because CMB Capital is a member-managed LLC in which Mr. Chambers performed managerial tasks, his time spent on rental real estate activities for CMB Capital is included in his calculation of hours performed in real property trades or businesses.[6] See, e.g., Garnett v. Commissioner, 132 T.C. at 376-381.

At trial petitioners submitted logs purportedly showing that, jointly, they spent 832 hours performing rental real estate activities during 2005, 848 hours during 2006, and 936 hours during 2007. Some of the hours recorded do not qualify for purposes of section 469(c)(7)(B)(i) because the hours, in part, are

_____

[5]See supra note 3.

[6]Time allocation for taxpayers with interests in more than one rental property is determined separately with respect to each property, unless the taxpayer makes an election to treat all interests in rental real estate as a single rental real estate activity. Sec. 469(c)(7)(A); sec. 1.469-9(e)(1), Income Tax Regs. The record does not address whether petitioners made an election to treat the San Diego and CMB Capital properties as a single activity. Assuming petitioners made this election, however, the time Mr. Chambers spent on all rental real estate activities is less than the 1,680-hour threshold.

attributed to Mrs. Chambers.[7] See sec. 469(c)(7)(B). Nonetheless, even if all of the hours qualified, the time recorded for real estate activities is less than the 1,680 hours Mr. Chambers spent working for the Navy. To wit, Mr. Chambers spent more than one-half of his personal services on trades or businesses, i.e., as an employee of the Navy, that are not related to his rental real estate businesses.

Accordingly, Mr. Chambers failed to meet the hours required under section 469(c)(7)(B)(i), and the Court need not address the 750-hour requirement in section 469(c)(7)(B)(ii). Mr. Chambers was therefore not a real estate professional under section 469(c) during the years at issue and, unless relief provided under section 469(i) applies, the real estate losses sustained during those years are passive activity losses disallowed by section 469(a).

B. Offset for Rental Real Estate Activities

The second exception to the general rule that rental real estate activities are per se passive is found in section 469(i). Section 469(i) provides that a taxpayer who actively participates in rental real estate activities may deduct up to $25,000 per year for related passive activity losses. Sec. 469(i)(1) and (2). Taxpayers may satisfy the active participation requirement by participating in management

_____

[7]Mrs. Chambers' ownership interest was limited to the San Diego property. There was no evidence suggesting that she was an employee or independent contractor of CMB Capital.

decisions, such as approving new tenants, deciding rental terms, and arranging services and repairs.  Madler v. Commissioner, T.C. Memo. 1998-112.  The $25,000 amount begins to phase out when the taxpayer's AGI, determined without regard to any passive activity loss, exceeds $100,000, and is phased out entirely when the taxpayer's AGI reaches $150,000.  Sec. 469(i)(3).

On each of their 2005, 2006, and 2007 Federal income tax returns, petitioners claimed that they actively participated in rental real estate activities and deducted $25,000 of passive activity losses.  Respondent does not dispute that petitioners actively participated in rental real estate activities, and the record does not suggest otherwise.  Instead, respondent asserts that petitioners' AGI for each year at issue exceeds $150,000, thereby making them ineligible for the $25,000 deduction or any part thereof.

For 2005, 2006, and 2007 petitioners reported AGI of $153,955, $150,428, and $146,993, respectively.  After concessions by the parties, see supra note 2, petitioners' AGI is increased to include cancellation of indebtedness income and disallowed itemized deductions.  According to respondent's concession on petitioners' deficiencies, their AGI for purposes of the section 469(i) phase out is $164,856, $175,320, and $164,900, for 2005, 2006, and 2007, respectively.

Because their AGI for each year at issue exceeds $150,000, petitioners are not entitled to deduct $25,000 per year of passive activity losses under section 469(i).

### III. Accuracy-Related Penalties

Respondent determined that petitioners are liable for section 6662 accuracy-related penalties for the years at issue. After concessions, see supra note 2, respondent determined accuracy-related penalties of $573, $1,922.60, and $826.60 for 2005, 2006, and 2007, respectively.

Section 6662(a) and (b)(1) and (2) provides an accuracy-related penalty equal to 20% of the underpayment attributable to any substantial understatement of income tax or to negligence or disregard of rules or regulations. However, no penalty will be imposed under section 6662(a) if the taxpayer establishes that he acted with reasonable cause and in good faith. Sec. 6664(c)(1). Circumstances that indicate reasonable cause and good faith include reliance on the advice of a tax professional or an honest misunderstanding of the law that is reasonable in the light of all the facts and circumstances. Sec. 1.6664-4(b), Income Tax Regs.; see Higbee v. Commissioner, 116 T.C. 438, 449 (2001). The taxpayer has the burden of proving that he acted with reasonable cause and in good faith. Rule 142(a); Reilly v. Commissioner, 53 T.C. 8, 14 (1970).

At trial Mr. Chambers provided credible testimony that he devoted a significant amount of time to the rental activities of the San Diego and CMB Capital properties. His rental real estate activities included, among other things, renting properties, collecting rents, purchasing materials, and scheduling repairs for the San Diego property and the CMB Capital properties, which comprised three rented properties in 2005 and four in 2006 and 2007. What is more, during the years at issue, Mr. Chambers was primarily responsible for making all management decisions, including market research and negotiation of real estate purchases, on CMB Capital's behalf.

Most of Mr. Chambers' rental real estate activities were corroborated by documentary evidence and recorded in petitioners' real estate logs. Petitioners, however, failed to account for real estate activities that could not be documented, such as prep time and phone calls, and as a result did not meet their burden of proof. Moreover, as discussed above, the Court surmises that petitioners misinterpreted the real estate professional requirements of section 469(c)(7) to require Mr. Chambers to devote more than one-half of his 1,680 personal service hours as an employee of the Navy to real property trades or businesses. See supra note 3.

The Court is convinced that petitioners had reasonable cause to believe that Mr. Chambers qualified as a real estate professional and materially participated in their rental real estate activities. The Court therefore declines to sustain the accuracy-related penalties with respect to those portions of petitioners' underpayments attributable to their rental real estate loss deductions claimed for the years at issue.

The Court has considered the parties' arguments and, to the extent not addressed herein, concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.