T.C. Memo. 1998-112

UNITED STATES TAX COURT

JAMES R. & ANITA MADLER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 773-97.                    Filed March 18, 1998.

James R. Madler, pro se.

<u>Mayer Y. Silber</u>, for respondent.

MEMORANDUM OPINION

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7443A(b)(3) and Rules 180,

181, and 182.[1]  Respondent determined deficiencies in petitioners' Federal income taxes as follows:

| Year | Amount |
|------|--------|
| 1991 | $3,029 |
| 1992 | 676 |
| 1993 | 296 |

After concessions,[2] the only issue remaining for decision is whether petitioners qualify for the $25,000 offset for rental real estate activities under section 469(i) for the taxable years 1991, 1992, and 1993.

The facts have been fully stipulated.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time of filing the petition, petitioners resided at Chicago, Illinois.

During the years in issue, petitioner James Madler (hereinafter sometimes referred to as petitioner) was self-employed as an attorney, and petitioner Anita Madler was not

---

[1]  All section references are to the Internal Revenue Code in effect during the years in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  Petitioners have conceded:  (1) They failed to report income in the amount of $3,478 on their 1991 return; (2) they failed to report wages in the amount of $571 on their 1991 return; (3) they failed to report income in the amount of $350 on their 1993 return; and (4) they are not entitled to claim deductions for the taxable years 1991 through 1993 resulting from losses attributable to property they owned in Cloudcroft, New Mexico.  The remaining adjustments are computational and are dependent upon our resolution of the issue for decision.

employed.  On or about April 30, 1981, petitioner purchased a condominium unit (hereinafter referred to as the condominium unit) in Corpus Christi, Texas.  Petitioner entered into a rental agency agreement, effective January 1, 1988, with Villa Del Sol Condominiums (VDS).  Under the terms of the agreement, petitioner retained VDS as the exclusive agent to rent the condominium unit, and VDS was obligated to use its best efforts to do so.

During the taxable years in issue, between 275 and 293 units were subject to rental agency agreements with VDS.  Pursuant to these agreements, including the agreement with petitioner, VDS pooled items of income and expense from all participating units and allocated to each unit owner a ratable share of income and expenses.  Thus, VDS did not determine each owner's share of income and expenses based upon whether the unit was actually rented; rather, VDS determined each owner's share based upon the number of days in which the unit was available for rental.  The agreement, however, required petitioner to provide the initial furnishings of the condominium unit, subject to the approval of VDS.  Petitioner was also obligated to provide the unit with a 19-inch television, a cassette stereo, a telephone, and a prescribed deadbolt lock.

The agreement required VDS to employ and manage all necessary personnel, including professional management, for implementation of the condominium unit's rental operation and

upkeep of the premises. The agreement required VDS to pay for the cost of repair and replacement of the unit's furnishings and household items, which would then be assessed as a shared expense of the condominium association. VDS was also responsible for paying all utility bills allocable to the unit, although petitioner retained ultimate liability for those expenses. Items of expense incurred by VDS on behalf of unit owners include: Front desk, telephone, housekeeping, maintenance, administration, accounting, marketing, replacement reserves, and electricity. Furthermore, the unit was available to VDS for up to 5 days per calendar year for promotional purposes, without payment of rent to petitioner. Lastly, the agreement could be terminated at will.

The record does not reflect the average period of customer use of petitioner's unit. On Schedule E of their returns for the taxable years in issue, petitioners reported income and claimed expenses concerning their rental real estate as follows:

|  | 1991 | 1992 | 1993 |
|---|---|---|---|
| Rent received | $ 8,829 | $ 9,513 | $ 9,063 |
| Expenses including depreciation | (15,003) | (14,284) | (14,491) |
| Loss | 6,174 | 4,771 | 5,428 |

A portion of the losses reflected on Schedules E for each of the years in issue relates to petitioner's condominium unit.[3]

---

[3] The items of income and expense reflected on petitioners'
(continued...)

Petitioners then fully deducted these losses on line 18 of their returns (Forms 1040) for each of the years in question. Only the portion of the losses attributable to petitioner's condominium unit remains in issue. Upon examination, respondent disallowed the claimed losses, reasoning that petitioner's ownership of the condominium unit constituted a passive activity for purposes of section 469, thereby precluding petitioners from offsetting losses attributable to the unit against nonpassive income.

Discussion

We begin by noting that petitioners bear the burden of proving that respondent's determination is erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). This burden remains when a case is fully stipulated. Borchers v. Commissioner, 95 T.C. 82, 90-91 (1990), affd. 943 F.2d 22 (8th Cir. 1991). Moreover, deductions are a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to any of the deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Section 162 permits deductions for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Section 212 permits deductions

---

[3](...continued)
returns are attributable to the condominium unit in question in addition to property owned by petitioners in Cloudcroft, New Mexico. Since there is no allocation on the returns, or elsewhere in the record, we have included the entire amounts.

for all the ordinary and necessary expenses paid or incurred during the taxable year for the production of income.  Section 469(a)(1) and (d)(1) generally prohibits a taxpayer from claiming deductions attributable to "passive activities" in an amount which exceeds the income generated by that taxpayer's "passive activities".  Scheiner v. Commissioner, T.C. Memo. 1996-554; Mordkin v. Commissioner, T.C. Memo. 1996-187.  The term "passive activity" includes:  (1) Any activity which involves the conduct of a trade or business and in which the taxpayer does not materially participate, and (2) any rental activity without regard to whether or not the taxpayer materially participates in the activity.  Sec. 469(c)(1), (2), (4).

For purposes of section 469, the term "rental activity" is defined in section 469(j)(8) as any activity where payments are principally for the use of tangible property.  See also sec. 1.469-1T(e)(3)(i), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).  An activity involving the use of tangible property, however, is not considered a rental activity for a taxable year if for such taxable year the average period of customer use for such property is 7 days or less.  Sec. 1.469-1T(e)(3)(i) and (ii)(A), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).  Therefore, owners of rental real estate are not considered to be engaged in a rental activity if the

average period of customer use is 7 days or less.  Scheiner v.

Commissioner, supra.

Section 469(i)(1) and (2) provides:

> (i)  $25,000 Offset for Rental Real Estate
> Activities.--
>
>> (1)  In general.--In the case of any
>> natural person, subsection (a) shall not
>> apply to that portion of the passive activity
>> loss * * * which is attributable to all
>> rental real estate activities with respect to
>> which such individual actively participated
>> in such taxable year * * *.
>>
>> (2)  Dollar limitation.--The aggregate
>> amount to which paragraph (1) applies for any
>> taxable year shall not exceed $25,000.

In effect, section 469(i) allows the taxpayer to offset from

nonpassive income up to $25,000 of certain passive activity

losses.[4]  With respect to the limited applicability of the

$25,000 offset to losses attributable to "rental real estate

activities", the legislative history of section 469 explains:

> Since relief under this rule applies only to
> rental real estate activities, it does not apply to
> passive real estate activities that are not treated as
> rental activities under the provision (e.g., an
> interest in the activity of operating a hotel). * * *
> [S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 1, 737.]

Congress, therefore, intended that taxpayers should be entitled

to the $25,000 offset for losses attributable to "rental real

---

[4]  The $25,000 offset allowable under sec. 469(i) is phased out as adjusted gross income, modified by sec. 469(i)(3)(E), exceeds $100,000, with a full phase-out occurring when modified adjusted gross income equals $150,000.  Sec. 469(i)(3)(A).

estate activities" only if the activity constitutes a "rental activity".

With respect to the requirement that the individual actively participate in the rental real estate activity, the legislative history of section 469 also provides:

> The difference between active participation and material participation is that the former can be satisfied without regular, continuous, and substantial involvement in operations, so long as the taxpayer participates, e.g., in the making of management decisions or arranging for others to provide services (such as repairs), in a significant and bona fide sense. Management decisions that are relevant in this context include approving new tenants, deciding on rental terms, approving capital or repair expenditures, and other similar decisions.
>
> *     *     *     *     *     *     *
>
> [A]s with regard to the material participation standard, services provided by an agent are not attributed to the principal, and a merely formal and nominal participation in management, in the absence of a genuine exercise of independent discretion and judgment, is insufficient. [S. Rept. 99-313, supra, 1986-3 C.B. (Vol. 3) at 737-738.]

In determining whether a taxpayer actively participates, the participation of the taxpayer's spouse is taken into account. Sec. 469(i)(6)(D).

The arguments of the parties on brief focus on the question of whether petitioners actively participated in the activity of renting petitioner's condominium unit for the purpose of allowing petitioners the offset provided at section 469(i). It is not clear from the record, however, whether petitioner's condominium

unit was rented for an average period of greater than 7 days for each of the years in issue. Therefore, it is unclear whether the activity in question constitutes a rental real estate activity under section 469(i).[5]

Since the record is vague as to the average period of customer use of the condominium unit, and since application of the relevant provisions differs depending upon whether the average period exceeds 7 days, we shall address whether petitioners are entitled to the claimed losses under either scenario.

1. Average Period of Customer Use Greater Than 7 Days

If the average period of customer use of petitioner's condominium unit was greater than 7 days, the activity of renting the unit is considered a rental real estate activity, and petitioners must establish that they actively participated in that activity to qualify for the offset under section 469(i). To support their contention that they actively participated in the rental of the condominium unit, petitioners argue as follows:

> Code Section 469(i) gives an "out" to those taxpayers who fall within the $25,000.00 offset provision. This "out" is limited to those taxpayers which "actively participated" in the rental of property. [Petitioners] submit that they qualify under this exception in that they participate and make management decisions on a

---

[5] As previously indicated, if the average period of customer use is 7 days or less, the activity is not considered a rental activity. Sec. 1.469-1T(e)(3)(i) and (ii)(A), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).

monthly basis.  This decision making process occurs each month in which a rental income or expense statement is received from the rental agreement.  At that time a management decision is made whether to continue or terminate the participation in the rental agreement * * * in that the rental agreement is terminable at will * * *.

* * * [Petitioners] may at any time elect to provide the rental services themselves or to procure another agent for these services.  Under these conditions the Petitioners are making significant and [bonafide] management decisions on a month-to-month basis whether to continue, cancel, or make another agency relationship.

Petitioners have offered no evidence to indicate that they personally approved of tenants, decided rental terms, approved of expenditures for repairs and capital improvements, or in any way participated in the management of the unit in a significant and bona fide sense.  It appears that VDS, rather than petitioners, performed all significant management activities.  Moreover, we do not consider petitioner's ability to terminate the contract with VDS as active participation per se; the legislative history of section 469 explains that taxpayers must themselves genuinely exercise independent discretion and judgment.  On the basis of the record before us, we conclude that petitioners have failed to establish that they actively participated in the activity of renting the condominium unit during each of the years in issue. Therefore, assuming that the average period of customer use of petitioner's condominium unit was greater than 7 days,

petitioners are not entitled to the $25,000 offset provided at section 469(i).

2. <u>Average Period of Customer Use Less Than 7 Days</u>

If the average period of customer use of petitioner's condominium unit was 7 days or less, petitioner was not engaged in a rental activity. Therefore, the activity of renting petitioner's condominium unit does not constitute a "rental real estate activity" for purposes of section 469(i), and petitioners are not entitled to use the $25,000 offset provided therein. Although the activity of renting petitioner's unit does not constitute a rental activity under this assumption, the activity will not be considered a passive activity if petitioners can establish that they materially participated in the activity. Sec. 469(c)(1)(B). Material participation is defined as involvement in the operations of an activity on a regular, continuous, and substantial basis. Sec. 469(h)(1). A taxpayer can establish material participation by satisfying one of seven tests provided in the regulations. Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988); see also <u>Mordkin v. Commissioner</u>, T.C. Memo. 1996-187. In this instance, however, we see no reason to set forth these tests and discuss at length whether petitioners have satisfied any one of them. Petitioners have offered little information concerning whether their involvement in the operation of petitioner's unit

was regular, continuous, and substantial. Petitioners have not established that they materially participated in the activity in question; therefore, they are not entitled to claim as a deduction the losses in question. Accordingly, we sustain respondent's determination on this issue.

To reflect the foregoing,

<u>Decision will be entered</u>
<u>for respondent</u>.