T.C. Summary Opinion 2004-62


UNITED STATES TAX COURT


ANDRE AND VENA NELSON, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10229-03S.              Filed May 14, 2004.


Andre and Vena Nelson, pro sese.

Thomas D. Yang, for respondent.


WOLFE, Special Trial Judge: This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed. Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect at relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency in petitioners' Federal income tax of $3,472 for 2001. The sole issue for decision is whether the passive activity rules of section 469 preclude petitioners from deducting the full amount of their losses from their rental real estate activities.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. When they filed their petition, petitioners resided in Oak Brook, Illinois.

Commencing in January 2001, petitioner Andre Nelson (petitioner) was employed full time as a Technical Support Team Manager for the Dial Corporation. He received a $2,500 sign-on bonus for accepting this position. During 2001, petitioner not only worked full time for Dial Corporation but also worked sufficient overtime to earn $5,337 plus $656.30 of ".5 Overtime Premium" and $545.23 of "Double Time Premium". He also received an $850 "Shift Premium". Petitioner Vena Nelson (Ms. Nelson) is a certified public accountant employed full time as the chief financial officer for the Rock of Ages Baptist Church in 2001.

During 2001 petitioners owned three apartment buildings in Illinois that they operated as rental real properties (rental properties). These rental properties were: (1) An apartment building located at 1626 North Luna in Chicago, acquired in 1994

(North Luna property); (2) an apartment building located at 2109 South 5th Avenue in Maywood, acquired in November 2001 (2109 Maywood property); and (3) an apartment building located at 2112 South 5th Avenue in Maywood, acquired in 1992 (2112 Maywood property). A total of 14 tenants resided at the three apartment buildings.

Petitioner personally attended to the management and maintenance of each of his rental properties without assistance from a management company. Petitioner collected monthly rents, delivered late warning notices, and took care of eviction proceedings when necessary. When vacancies arose, petitioner showed the vacant unit to prospective applicants, conducted applicant interviews, checked credit reports and references, and attended to lease signings. Petitioner responded to requests for routine repairs and was responsible for general maintenance activities such as caring for the lawns, shoveling snow in the winter, and waste management. In addition, petitioner was involved in major renovation projects at two of the three rental properties in 2001, including the modernizing of outdated kitchens, bathrooms, and furnaces.

Ms. Nelson was not actively involved with the rental properties.

Petitioner claims that he devoted more time to his rental property activities in 2001 than to his full-time job with the

Dial Corporation.  In a letter addressed to this Court on June 19, 2003, and incorporated in the stipulation of facts, petitioner described his typical day in the following manner:

- Although I have a full-time job, I work an off-shift which allows me time to manage the apartment buildings on a daily basis.
- My typical schedule is:  8:00am - 3:00 pm apartment management; 4:00 pm - 12:00 midnight full-time employee at Dial Corporation; 1:00am - 8:00am sleep. My weekends are also heavily dedicated toward apartment management.

* * * * * * *

Yes, this is a lot of work, but my job provides health insurance and other benefits for my family.  I would not have this safety net without my full-time job at Dial Corporation.

In connection with the rental properties, petitioners reported rental real estate losses for 2001 on a Schedule E, Supplemental Income and Loss, as follows:

| Property | Rents received | Total expenses | Losses |
|---|---|---|---|
| North Luna | $15,600 | $22,479 | ($6,879) |
| 2109 Maywood | 2,150 | 10,729 | (8,579) |
| 2112 Maywood | 29,814 | 32,840 | (3,026) |
| Total | $47,564 | ($66,048) | ($18,484) |

By notice of deficiency dated March 21, 2003, respondent determined that petitioners' rental real estate losses were passive activity losses within the meaning of section 469 and disallowed $12,248 of the $18,484 in rental real estate losses claimed by petitioners.  As a result of this adjustment, respondent determined a deficiency in petitioners' 2001 tax of $3,472.

## Discussion

The taxpayer generally bears the burden of proving that the Commissioner's determinations are incorrect. Rule 142(a). Since petitioners did not meet the substantiation and recordkeeping requirements of section 7491(a), the burden of proof remains on petitioners.

Section 162 permits deductions for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Section 212 permits deductions for all the ordinary and necessary expenses paid or incurred during the taxable year for the production of income. The amounts deductible pursuant to these provisions are not in dispute here. However, section 469 generally disallows passive activity losses for individual taxpayers. Sec. 469(a)(1)(A). A passive activity loss is the amount by which the aggregate losses from all passive activities for the taxable year exceed the aggregate income from all passive activities for that year. Sec. 469(d)(1). A passive activity is any trade or business activity in which the taxpayer does not materially participate. Sec. 469(c)(1).

Rental activities generally are treated as passive activities without regard to the extent that the taxpayer materially participates in the activity. Sec. 469(c)(2). Rental activities involving real estate are not necessarily passive

activities if the taxpayer is a qualifying taxpayer under section 469(c)(7). See sec. 1.469-9(e)(1), Income Tax Regs. Instead, the rental real estate activity of a qualifying taxpayer who materially participates in the activity is not subject to the passive activity rules of section 469. Sec. 469(c)(7); sec. 1.469-9(e)(1), Income Tax Regs. A qualifying taxpayer must meet the following requirements under section 469(c)(7)(B):

> (i)  more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

> (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

A taxpayer is considered to materially participate in a trade or business if his activities are regular, continuous, and substantial. Sec. 469(h)(1). In establishing whether a taxpayer's real property activities result in passive activity losses, each interest in rental real estate is treated as a separate rental real estate activity unless the qualifying taxpayer makes an election to treat all interests in rental real estate as a single rental real estate activity. Sec. 469(c)(7)(A); sec. 1.469-9(e)(1), Income Tax Regs. Petitioners did not make such a timely election, so petitioner's activities must be regular, continuous, and substantial with regard to each individual rental property.

With respect to the evidence that may be used to establish material participation, temporary Treasury regulations promulgated under section 469 provide:

> The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988); see also sec. 1.469-9(b)(5), Income Tax Regs. This Court has acknowledged that these temporary regulations are somewhat ambivalent concerning the records to be maintained by taxpayers, but we have held that the regulations do not allow a post-event "ballpark guesstimate". Fowler v. Commissioner, T.C. Memo. 2002-223; Goshorn v. Commissioner, T.C. Memo. 1993-578.

In support of their argument that petitioner was a qualifying taxpayer under section 469(c)(7)(B) for 2001, petitioners failed to substantiate the amount of time petitioner spent on his rental real estate activities relative to his full-time job at the Dial Corporation. Deductions are a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to any of the deductions claimed. Rule

142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992). A taxpayer is required to maintain records sufficient to substantiate deductions claimed on his tax return. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Moreover, a taxpayer who claims a deduction bears the burden of substantiating the amount and purpose of the item claimed. <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs.

To establish the amount of time petitioner spent on his rental real estate activities, petitioners introduced a spreadsheet summarizing the work activities he performed on a daily basis for each of his three rental properties (daily work log). The daily work log was not prepared contemporaneously as petitioner performed each activity but was composed by petitioners, purportedly from various receipts and documents, in preparation for trial. Petitioners claim that they have the underlying receipts and documents from which the spreadsheet was prepared, but they did not think it was necessary to bring them to Court for trial or to introduce them into evidence. In the absence of any corroborative evidence, we do not consider the daily work log persuasive.

Furthermore, the daily work log merely identifies tasks and services performed by petitioner on a particular day. It does not give any indication or approximation of how much time

petitioner actually spent servicing his rental properties. Consequently, even if we were to give weight to the daily work log, that document by its own terms would not have established that petitioner spent more than one-half of his time engaged in rental real estate activities or that the time petitioner spent on such rental real estate activities amounts to more than 750 hours of service for purposes of section 469(c)(7)(B).

Other evidence introduced by petitioners at trial was petitioner's letter to the Court, dated June 13, 2003, in which petitioner described his typical work schedule and petitioners' oral testimony at trial. It is well established that the Court is not bound to accept at face value such uncorroborated and self-serving testimony from a taxpayer. Shea v. Commissioner, 112 T.C. 183, 189 (1999); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Petitioners did not provide appointment books, calendars, or narrative summaries describing in a detailed and convincing manner the hours that petitioner actually spent engaged in his real property activity and did not call any corroborating witnesses to substantiate their own testimony. In light of his full work schedule at the Dial Corporation, petitioner would have to provide substantial and detailed evidence to convince us that he managed to spend more than one-half of his time on rental real estate activities or that he even spent more than 750 hours on them during the year in issue. We

do not doubt that petitioner worked hard during the year in issue, but he simply failed to present convincing evidence about the amount of his work in his real property activities.  We hold that petitioner was not a qualifying taxpayer in 2001 for purposes of section 469(c)(7), and therefore his rental real estate activity during 2001 is classified as passive activity.

Although petitioners are not entitled to deduct the full amount of their passive rental real estate losses, section 469(i) allows a taxpayer to claim up to $25,000 per year in passive activity losses from rental real estate activities (the $25,000 exemption), subject to a phaseout once the taxpayer's adjusted gross income exceeds $100,000.  To qualify for the $25,000 exemption, the taxpayer must have "actively participated" in the rental real estate activity.  The active participation requirement can be satisfied without regular, continuous, and substantial involvement in an activity.  See Madler v. Commissioner, T.C. Memo. 1998-112; S. Rept. 99-313, 737-738 (1986), 1986-3 C.B. (Vol. 3) 1, 737-738.  The active participation standard should be met as long as the taxpayer participates in a significant and bona fide sense in making management decisions or arranging for others to provide services such as repairs.  Madler v. Commissioner, supra.  The $25,000 exemption is phased out by 50 percent of the amount by which the adjusted gross income of the taxpayer for the taxable year

exceeds $100,000. Sec. 469(i)(3). For this purpose, the taxpayer's adjusted gross income is determined without regard to any passive activity loss. Sec. 469(i)(3)(F)(iv).

Respondent agrees that petitioner actively participated in rental real estate activities and that petitioners are entitled to the $25,000 exemption, subject to the phaseout provision. On their 2001 tax return, petitioners reported $135,627 in wages, $498 in taxable interest, $793 in taxable refunds or credits, and $611 in unemployment compensation for an adjusted gross income (without the passive activity loss) of $137,529. Petitioners' adjusted gross income exceeds $100,000 by $37,529. Fifty percent of $37,529 is $18,764 (rounded). Petitioners' maximum offset amount of $25,000 is reduced by $18,765 to $6,236. Thus, we find that petitioners are entitled to rental real estate losses of $6,236 under section 469(i), as determined by respondent in the notice of deficiency.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered for respondent.