T.C. Summary Opinion 2014-20

UNITED STATES TAX COURT

AMY L. HARLOFF, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2641-12S.                    Filed March 6, 2014.

<u>Mark D. Allison</u>, <u>Timothy J. Sullivan</u>, and <u>Sara A. Silverstein</u>, for petitioner.

<u>Eugene A. Kornel</u>, for respondent.

SUMMARY OPINION

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent

for any other case. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $19,851 in Amy L. Harloff's 2008 Federal income tax and an accuracy-related penalty of $3,970.20 under section 6662(a).

After concessions, the issues for decision are: (1) whether petitioner was engaged in passive activities with respect to two rental properties in 2008; and (2) whether petitioner is liable for the accuracy-related penalty under section 6662(a).

Background

Some of the facts have been stipulated, and we incorporate the stipulation of facts by this reference. At the time the petition was filed, petitioner resided in New York.

Before the year in issue, petitioner worked for Morgan Stanley. Petitioner was laid off in 2007 and remained unemployed throughout 2008.

Petitioner had an ownership interest in, as relevant here, two separate properties in 2008, one in British Columbia and the other in Hawaii.[1]

---

[1] Petitioner owned an interest in a third property in 2008, a timeshare, and claimed a deduction for losses of $7,194 with respect to that timeshare interest.

(continued...)

I.    The Whistler Property

The British Columbia property in which petitioner had an ownership interest was at 4090 Whistler Way, Whistler, British Columbia (Whistler property).  The Whistler property contained 83 hotel units, with each owner sharing in the revenue and expenses of the property.  Petitioner's specific ownership interest in the property related to unit 480, a studio hotel suite with a kitchenette.  The average length of a customer stay at the Whistler property in 2008 was four days.

A.    Management of the Whistler Property

O'Neill Hotels and Resorts Ltd. managed and operated the Whistler property in 2008.  The Whistler property also employed a general manager, and unit owners were represented by an owners council and by a managing body called the Strata council.  The owners council, the Strata council, and an owners representative (who reported to the owners council) worked on behalf of Whistler property owners.

---

[1](...continued)
Respondent disallowed the claimed loss deduction in the notice of deficiency. Petitioner later conceded that she was not entitled to the claimed loss deduction with respect to that property.  The average customer stay at the timeshare property was seven days in 2008.

The general manager of the Whistler property managed the day-to-day operations of the property. The general manager provided monthly statements and reports detailing hotel operations and performance, revenue and expense items, and any new property initiatives. The hotel provided a Web site for unit owners, and petitioner often logged on to retrieve her investor statements and the general manager's monthly statements and reports.

The owners council was a representative body of owners elected by the owners to represent their interests. In 2008 the owners council's primary responsibility was to renegotiate the hotel management agreement (management agreement).

The Strata council served as a quasi-board of directors for the property and held monthly meetings to carry out the hotel's business. Its primary activity related to the hotel budget.

Although petitioner had previously served as a representative on the owners council, she was not a member and did not attend the owners council or Strata council meetings in 2008. However, petitioner received and reviewed updates summarizing the meetings.

B.     Whistler Property Activities--2008

The Whistler property owners and management considered several changes in 2008.  Management suggested that the hotel undergo interior renovations to update the hotel decor in anticipation of the upcoming winter Olympics.  Management also proposed a room reconfiguration for suite owners, suggesting a more "dorm-like" feature, which would accommodate additional guests per room.  Petitioner opposed the room reconfiguration and discussed this issue with other owners.  Petitioner drafted a letter to the property manager voicing her disagreement with the reconfiguration.  As a result, petitioner's unit was not reconfigured in 2008.

As a result of alleged misconduct by the Whistler property hotel management company before and during 2008, the owners council began renegotiating the management agreement.  The management agreement governed the responsibilities of the owners and the hotel management and required approval by the owners.  Petitioner reviewed reports, legal opinions, and financial audits pertaining to the management agreement.  Petitioner also discussed the status of the renegotiation with other owners and held group discussions through a Yahoo! group forum.

Three meetings were held in 2008 concerning the Whistler property, each lasting approximately six hours. Petitioner reviewed materials pertinent to the agenda of each meeting and attended all three meetings via webcast.

Petitioner received and reviewed approximately 300 emails in 2008 relating to the Whistler property, 100 of which contained attachments for review. These email communications regarded: (1) issues pertaining to the annual general meeting, which took place in February 2008; (2) issues pertaining to the special general meetings which took place in June and November 2008; (3) the renegotiation of the management agreement; (4) general owner information, including owner updates and newsletters; (5) information relating to Strata council meetings; and (6) the reconfiguration of the Whistler property units. Most of the emails pertained to the renegotiation of the management agreement.

In addition to the foregoing activities, petitioner also reviewed business reports, performed market analyses, made mortgage payments, and organized records for the Whistler property.

II.  The Hawaii Property

The Hawaii property, a condominium complex, was at 111 Kahului Beach Road, Kahului, Maui, Hawaii 96793 (Hawaii property). Petitioner owned one condominium in the complex: a two-bedroom one-and-a-half bath unit on the first

floor. Petitioner's unit was managed in 2008 by Kanani Realty, LLC, and was rented out on an annual basis. The property also employed an onsite manager and a security guard.

One meeting was held in 2008 concerning the Hawaii property. This meeting addressed the general operation of the property, proposed changing the metering from collective to individual metering, and proposed the installation of a security gate around the complex. Petitioner reviewed pertinent documents before the meeting and voted at the meeting via proxy.

Petitioner's condominium was rented out in 2007, but near the close of 2007 she experienced problems with her tenant. One evening in late December 2007 the tenant arrived home and began knocking and kicking on the front door of a neighboring apartment. When the neighbor opened his door, the tenant tried to force his way into the neighbor's apartment. The neighbor resisted, and there was an altercation. Both security and the police were called, and the tenant was arrested. As a result of the tenant's behavior management imposed several fines on petitioner and requested that she evict the tenant. In early 2008 petitioner evicted the tenant and later initiated legal proceedings.

Petitioner's unit was in substantial disrepair; the floors and doors were broken, tiles were cracked, the toilet and refrigerator were broken, screens were

torn, and the unit required cleaning. Because petitioner anticipated that the damaged floor was going to be the most expensive item to repair, she researched various flooring options for the lowest cost repair. Petitioner eventually decided to dispense with major renovations (including repairing the floor) in order to get her unit out on the market quickly.

Petitioner researched the local market. Because of the poor economy in 2008, she decided to lower her offering price. Petitioner finally found a tenant in July 2008. Petitioner's tenant fell behind on rent soon after occupying the unit.

Throughout 2008 petitioner communicated frequently with her management company, with an attorney, and with contractors. Petitioner addressed project cost estimates, legal and rental disputes, finding a new tenant, and other general issues for her condominium. Petitioner also reviewed mail, filed documents, researched insurance policies, reconciled rental and maintenance payments, and organized records for the Hawaii property.

III.    Time Reconstruction

Petitioner estimated that she spent approximately 895 hours "managing" the Whistler property and 534 hours "managing" the Hawaii property.

IV.    2009 Federal Income Tax Return

Petitioner claimed deductions for 2008 for a net loss of $27,721 for the Whistler property and a net loss of $31,778 for the condominium.  Petitioner offset the net losses against non-rental-related income.  Petitioner did not elect to treat her rental property interests as one activity for 2008.

Respondent issued petitioner a notice of deficiency and determined that portions of the claimed 2008 loss deductions were subject to the passive loss limitations under section 469 and determined an accuracy-related penalty under section 6662(a).

## Discussion

Section 469(a) generally disallows for the taxable year any passive activity loss.  A passive activity loss is the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year.  Sec. 469(d)(1).  A passive activity is any trade or business in which the taxpayer does not materially participate.  Sec. 469(c)(1).  Under section 469(h)(1) a taxpayer materially participates in an activity only if such individual is involved in the operations of the activity on a basis that is regular, continuous, and substantial.  A taxpayer may show material participation, as relevant here, by

participating in the activity for more than 500 hours during such year.[2] See sec. 1.469-5T(a)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988).

Rental real estate activity is generally treated as a per se passive activity regardless of whether the taxpayer materially participates. Sec. 469(c)(2). However, the rental activities of a taxpayer who is a real estate professional pursuant to section 469(c)(7)(B) are not treated as per se passive activities. Sec. 469(c)(7)(A)(i). Instead, the rental activities are treated as a trade or business and are subject to the material participation requirements of section 469(c)(1). Sec. 1.469-9(e)(1), Income Tax Regs.

Respondent contends that, with respect to both properties, petitioner was engaged in passive activities under section 469(c). Petitioner asserts that she was a real estate professional and that she materially participated with respect to both properties and in the alternative that she materially participated in the Whistler property and actively participated in the Hawaii property.

---

[2]Petitioner does not assert that she satisfies the other "material participation" tests set forth in the regulations. See generally sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988).

A taxpayer qualifies as a real estate professional and is not engaged in a per se passive activity if:

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

> (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.
> Sec. 469(c)(7)(B).

For purposes of determining whether a taxpayer is a real estate professional, a taxpayer's material participation is determined separately with respect to each rental property unless the taxpayer makes an election to treat all interests in rental real estate as a single rental real estate activity. Sec. 469(c)(7)(A); sec. 1.469-9(e)(1), Income Tax Regs. Petitioner did not elect to treat the rental properties as a single activity. Thus, the material participation standard in section 469(h)(1) must be met.

I.      The Whistler Property

The parties agree that because the average length of a customer stay at the Whistler property in 2008 was less than seven days, petitioner's Whistler property activity was not a rental activity and therefore, was not a per se passive activity.

See sec. 1.469-1T(e)(3)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).

A taxpayer may deduct losses attributable to an activity if the taxpayer can demonstrate material participation in the activity. With respect to material participation, the regulations provide that

> [w]ork done by an individual in the individual's capacity as an investor in an activity shall not be treated as participation in the activity for the purposes of this section unless the individual is directly involved in the day-to-day management or operations of the activity * * * [W]ork done by an individual in the individual's capacity as an investor in an activity includes--(1) [s]tudying and reviewing financial statements or reports on the operations of the activity; (2) [p]reparing or compiling summaries or analyses of the finances or operations of the activity for the individual's own use; and (3) [m]onitoring the finances or operations of the activity in a non-managerial capacity.

Sec. 1.469-5T(f)(2)(ii)(A) and (B), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).

Petitioner asserts that the activities she performed for the Whistler property in 2008 are managementlike activities and are analogous to those of the taxpayers in Scheiner v. Commissioner, T.C. Memo. 1996-554, and Mordkin v. Commissioner, T.C. Memo. 1996-187.

In Scheiner, the taxpayer owned an interest in a condominium hotel. The taxpayer was a board member of the condominium and performed a wide range of

activities as a board member. The Court accepted that all of the taxpayer's time spent on board matters constituted material participation in the condominium rental activity.

The taxpayer in Mordkin also owned an interest in a condominium. The taxpayer attended board meetings as representative of the condominium owners and also was a chairman of certain committees of the condominium. The Court found that all of the hours that were spent by the taxpayer as a board member and officer representing the owners of the condominium qualified as management activity.

In the foregoing cases, each taxpayer's activities were performed in the capacity of a member of management, as either a board member or a representative of the owners of the property. Petitioner's activities, however, were not performed in her capacity as a member of management. The regulations specifically provide that work performed by an individual in the individual's capacity as an investor in an activity shall not be treated as material participation unless the individual is directly involved in the day-to-day management or operations of the activity. Sec. 1.469-5T(f)(2)(ii)(A) and (B), Temporary Income Tax Regs., supra.

Despite this provision in the regulations, petitioner asserts that this Court has found that administrative activities constituted management activities for

purposes of section 469, citing <u>Trzeciak v. Commissioner</u>, T.C. Memo. 2012-83, and <u>Hassanipour v. Commissioner</u>, T.C. Memo. 2013-88. Petitioner's reliance on these cases is misplaced.

In <u>Trzeciak</u>, the taxpayers initiated an action in this Court seeking reasonable litigation costs as a result of the Internal Revenue Service's (IRS) issuance of a notice of deficiency disallowing, in pertinent part, deductions for certain section 469 losses. The IRS later conceded the section 469 issue, and the Court never made a finding as to whether the taxpayers' activities constituted management activities within the meaning of section 469. Accordingly, this case does not support petitioner's position.

In <u>Hassanipour</u>, the Court found as fact that the taxpayers "performed various duties in relation to the rental properties including repairs, administrative tasks, communicating with tenants, researching landlord/tenant law, preparing tax returns, and other management activities." Petitioner, presumably from this statement, concludes that the Court found that administrative tasks constituted management activities and that preparation of tax returns and research related to landlord/tenant law also constituted management activity. The Court ultimately concluded that it need not consider whether the taxpayers' activities constituted management activities because the taxpayers did not spend more than one-half of

their working hours performing personal services for rental activities in a real property trade or business in which they materially participated.

Notwithstanding whether petitioner's participation in the Whistler activity exceeded 500 hours, petitioner's primary activity consisted of investor activity. Her involvement with the renegotiation of the management agreement, which constituted most of her activity for the Whistler property in 2008, rose only to the level of an interested investor because she was not a council member or a representative of the owners. See sec. 1.469-5T(f)(2)(ii)(A) and (B), Temporary Income Tax Regs., supra. Unit owners were kept apprised of negotiations and may have been interested in reviewing documents, lending a voice, and voting on the final negotiated agreement, but actual negotiation of the management agreement took place between the owners council and the management company.

Petitioner's remaining activities consisted of filing reports, tracking expenses, discussing issues with other owners, reviewing investor statements and manager's reports, attending meetings via webcast, and reviewing materials pertinent to the meetings, most if not all of which are in the nature of investor activities unless performed as a part of the day-to-day management. The only activity petitioner engaged in as a material participant was the proposed renovation of her own unit in the Whistler property. However, the record reflects

that petitioner spent 12 to 20 hours on this activity, which is far below the 500 hours required for material participation.

The Court finds that petitioner did not materially participate in the Whistler property in 2008 and that it was a passive activity.

II.     The Hawaii Property

Petitioner does not assert that her activity in the Hawaii property was not per se passive as a rental activity under section 469(c)(2). Instead, petitioner asserts that she was a real estate professional in 2008 with respect to this property. Thus, if petitioner meets the requirements of section 469(c)(7) and is a real estate professional, the material participation standard in section 469(c)(1) must be met with respect to each separate interest in rental real estate. See sec. 469(c)(7)(A). By petitioner's own admission she spent a total of only 534 hours "managing" the Hawaii property in 2008. Because petitioner did not show that she materially participated in other real property trades or businesses except to the extent of at most, 20 hours, petitioner does not meet the 750-hour requirement for a real estate professional in 2008; therefore, the Hawaii property rental activity was a per se passive activity in 2008.

In the alternative, petitioner asserts that she actively participated in the Hawaii property.

Section 469(i) provides an additional exception to the general rule of disallowance of passive activity losses. A taxpayer who "actively participated" in a rental real estate activity can deduct a maximum loss of $25,000 per year related to the activity. Sec. 469(i)(1) and (2). This exception is fully phased out, however, when adjusted gross income equals or exceeds $150,000. Sec. 469(i)(3)(A), (E), (F).

The active participation standard for deduction of rental real estate activity losses can be satisfied without regular, continuous, and substantial involvement in an activity. Madler v. Commissioner, T.C. Memo. 1998-112. Instead, taxpayers may satisfy the active participation requirement by participating in management decisions, such as approving new tenants, deciding rental terms, and arranging services and repairs. Id.

Many events transpired in 2008 with respect to the Hawaii property that required petitioner's significant attention and decisionmaking authority. Petitioner was forced to evict a tenant, she initiated legal proceedings against the tenant, she extensively researched various options for fixing her unit, she researched the local economy and the reasonableness of her rent, she engaged in efforts to locate a new tenant, and she communicated with other owners, the management company and attorneys to resolve various issues. Given petitioner's significant involvement in

managing the Hawaii property in 2008, the Court is satisfied that she actively participated in the management activities of the Hawaii property in 2008. Accordingly, petitioner is entitled to deduct the claimed real estate losses pursuant to section 469(i)(1) to the extent these losses are not otherwise limited under section 469(i)(3)(A).[3]

III.  Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a penalty of 20% of the portion of an underpayment of tax attributable to the taxpayer's negligence, disregard of rules or regulations, or substantial understatement of income tax.  "Negligence" includes any failure to make a reasonable attempt to comply with the Code, including any failure to keep adequate books and records or to substantiate items properly.  See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  A "substantial understatement" includes an understatement of income tax that exceeds the greater of 10% of the tax required to be shown on the return or $5,000.  See sec. 6662(d); sec. 1.6662-4(b), Income Tax Regs.

---

[3]Petitioner reported income and compensation from various sources on her 2008 Federal income tax return, including wages, miscellaneous income, unemployment compensation, retirement distributions, taxable refunds, credits or offsets of State and local income taxes, and business income.  The combined income or compensation from these sources exceeded $150,000.

The section 6662(a) accuracy-related penalty does not apply with respect to any portion of an underpayment if the taxpayer proves that there was reasonable cause for such portion and that he acted in good faith with respect thereto. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess the proper tax liability; the knowledge and the experience of the taxpayer; and any reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the taxpayer's effort to assess the taxpayer's proper tax liability. Id.

The underpayment of tax required to be shown on petitioner's return is the result of a substantial understatement of income tax because the understatement of $19,851 exceeds $5,000, which is greater than 10% of the tax required to be shown on the return.[4] See sec. 6662(b)(2), (d)(1); sec. 1.6662-4(b)(1), Income Tax Regs. Respondent's burden of production has been satisfied. See sec. 7491(c). Accordingly, because respondent has met his burden of production, petitioner

_____

[4]Petitioner reported tax due of $1,489 for 2008. Because petitioner's allowed claim for a certain amount of expenses associated with the Hawaii property is likely phased out under sec. 469(i)(3)(A), see supra note 3, the deficiency would remain unchanged for purposes of sec. 6662(b)(2) and (d)(1).

must come forward with persuasive evidence that the accuracy-related penalty should not be imposed with respect to the underpayment because she acted with reasonable cause and in good faith.  See sec. 6664(c)(1); Rule 142(a); Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Petitioner provided email snapshots demonstrating the extensive communications she engaged in for both properties in 2008.  Petitioner also communicated with other owners and management, she researched and reviewed documents in anticipation of meetings, and participated in the meetings by attending or voting.  Petitioner also provided a summary and credible testimony regarding her involvement and the activities she engaged in for the Whistler property and the Hawaii property.  Although most of petitioner's activities did not constitute "management" activities for purposes of section 469, these activities might otherwise have qualified as management (as opposed to investment) activities if she had performed them as a member of day-to-day management. Because she had been a representative of the owners in prior years (and a part of the day-to-day management), it was reasonable for petitioner to presume that the same activities she performed in 2008 as she had in other years constituted management activities, even though they were not performed as a member of the owners council.

The Court finds that petitioner was credible and detailed in her testimony and had reasonable cause to claim deductions for the losses associated with the Whistler property and the Hawaii property given her extensive participation in these rental activities in 2008. Accordingly, petitioner is not liable for the accuracy-related penalty under section 6662 for 2008 with respect to the portions of the underpayment due to the deduction of losses claimed for the Whistler property and the Hawaii property.

Petitioner asserts that she also should not be liable for the accuracy-related penalty with respect to the deduction of losses that she claimed for her timeshare property. Petitioner asserts that she actively participated in the timeshare activity in 2008, but unbeknownst to her, because the average customer stay for 2008 was exactly seven days, the active participation exception was not available because the property was not considered rental real estate. Sec. 1.469-1T(e)(3)(ii)(A), Temporary Income Tax Regs., supra. Consequently, she conceded that she was not entitled to the claimed loss deduction for the timeshare property. See supra note 1.

Although petitioner may have acted reasonably under the circumstances, she did not provide other evidence or testify regarding her involvement and activities in the timeshare property, and the Court is unable to conclude that she acted

reasonably and in good faith with respect to the claimed loss deduction. Accordingly, the Court sustains the imposition of the accuracy-related penalty with respect to the portion of the underpayment due to the disallowed loss deduction relating to the timeshare property for 2008.

We have considered the parties' arguments and, to the extent not discussed herein, we conclude the arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.