**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-54

UNITED STATES TAX COURT

OSCAR M. ALFARO AND BLANCA M. ALFARO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20004-12S.                       Filed June 16, 2014.

Oscar M. Alfaro and Blanca M. Alfaro, pro sese.

<u>David J. Warner</u>, <u>Emma S. Warner</u>, and <u>Willis B. Douglass</u>, for respondent.

SUMMARY OPINION

GALE, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant

---

[1]Unless otherwise noted, all section references are to the Internal Revenue Code of 1986, as in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioners' 2010 Federal income tax of $11,816 and an accuracy-related penalty under section 6662(a) of $2,363.[2]  The issues for decision are:  (1) whether section 469 bars petitioners from deducting a loss from their rental real estate activity for 2010; and (2) whether petitioners are liable for an accuracy-related penalty.

<u>Background</u>

Some of the facts have been stipulated and are so found.  The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.  At the time the petition was filed, petitioners resided in California.

Throughout 2010 petitioners worked full time as employees--petitioner Blanca M. Alfaro at a hospital and petitioner Oscar M. Alfaro at a factory.  For the year, Mr. Alfaro worked at the factory a total of 1,680 hours, averaging 35 hours per week, for a total of 48 weeks, with 2 weeks of vacation, 1 week of sick leave, and 1 week during which the factory was closed.

Petitioners owned two rental properties during 2010.  They personally performed services relating to the management of the rental properties, such as rent

---

[2]All dollar amounts are rounded to the nearest whole dollar.

collection, maintenance, and repairs.  Between them, Mr. Alfaro spent more time performing these services.  Petitioners kept a calendar book with handwritten notes of the time they spent performing services with respect to their rental properties during 2010.  The calendar book shows 256 hours of these services performed by both petitioners during 2010, as follows:

| Month | Total Hours |
|---|---|
| January | 4 |
| February | 29 |
| March | 114 |
| April | 29 |
| May | 16 |
| June | 18 |
| July | 10 |
| August | 4 |
| September | 26 |
| October | 2 |
| November | 2 |
| December | 2 |
| Total | 256 |

The expenses petitioners incurred with respect to the rental properties (including depreciation), which respondent concedes are fully substantiated, exceeded the income from the properties by $44,266.  Petitioners claimed a loss in

that amount on a Schedule E, Supplemental Income and Loss, attached to their Federal income tax return for 2010. The return reported adjusted gross income of $127,159. The return was prepared by a certified public accountant with whom petitioners consulted for that purpose. Among the materials petitioners provided to their accountant were the records of the rental property expenses they incurred and the calendar book in which they had recorded the hours spent performing services with respect to the rental properties.

Respondent issued a notice of deficiency to petitioners in which he determined that the rental real estate loss petitioners claimed on Schedule E was not allowable, that certain computational adjustments to petitioners' miscellaneous itemized deductions were necessary, and that petitioners were liable for an accuracy-related penalty under section 6662. Petitioners timely petitioned for redetermination.

## Discussion

Rental Real Estate Losses

Deductions are a matter of legislative grace, and the burden of showing entitlement to a claimed deduction is on the taxpayer.[3] Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Taxpayers may claim deductions for certain business and investment expenses under sections 162 and 212. However, section 469, applicable to individuals and certain other taxpayers, disallows any "passive activity loss" for the taxable year. A "passive activity loss" is the amount by which the aggregate losses from all passive activities for the taxable year exceed the aggregate income from all passive activities for such year. Sec. 469(d)(1). A "passive activity" is any activity which involves the conduct of any trade or business in which the taxpayer does not materially participate.[4] Sec. 469(c)(1).

---

[3]Petitioners have not claimed or shown entitlement to any shift in the burden of proof pursuant to sec. 7491(a).

[4]In general, a taxpayer "materially participates" in a trade or business if the taxpayer is involved in the operations of the trade or business on a regular, continuous, and substantial basis. Sec. 469(h)(1). Congress authorized the Secretary to prescribe regulations that specify what constitutes material participation, see sec. 469(l)(1), and the Secretary promulgated seven regulatory tests in sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988). A taxpayer who satisfies any one of the seven tests meets the material participation requirement.

Rental real estate activities are generally treated as per se passive activities regardless of whether the taxpayer materially participates. Sec. 469(c)(2), (4). However, an exception is made for certain taxpayers who materially participate in real property trades or businesses--so-called real estate professionals. The rental real estate activities of these taxpayers are not automatically deemed passive activities but instead are treated as trades or businesses subject to the material participation requirements of section 469(c)(1). Sec. 1.469-9(e)(1), Income Tax Regs. A taxpayer qualifies for this exception if:

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

> (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

Sec. 469(c)(7)(B). In the case of a joint return, one spouse must separately satisfy both requirements. Id.

For purposes of the foregoing exception, "personal services" means any work performed by an individual in connection with a trade or business, sec. 1.469-9(b)(4), Income Tax Regs., including in the capacity of an employee who satisfies the ownership requirement of section 469(c)(7)(D)(ii), see Fowler v. Commissioner, T.C. Memo. 2002-223, 2002 WL 31005826, at *5. A "real

property trade or business" means any real property development, redevelopment, construction, reconstruction, acquisition, conversion, rental, operation, management, leasing, or brokerage trade or business. Sec. 469(c)(7)(C).

Taxpayers may establish the amount of personal services that they performed in a real property trade or business by any reasonable means. Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). While the regulations do not prescribe records that a taxpayer must maintain, they do not allow a postevent "ballpark guesstimate". Moss v. Commissioner, 135 T.C. 365, 369 (2010).

The parties do not dispute that petitioners incurred the rental real estate loss that they claimed on their return. They dispute whether either Mr. or Mrs. Alfaro qualifies for the exception under section 469(c)(7)(B) for taxpayers engaged in a real property business. Petitioners argue that Mr. Alfaro, who spent more time performing services with respect to their rental properties than Mrs. Alfaro, so qualifies. As reflected in our findings, Mr. Alfaro worked 1,680 hours at the factory where he was employed during 2010.[5] Therefore, to establish that he qualifies for the exception provided in section 469(c)(7), petitioners must show that Mr. Alfaro performed more than 1,680 hours of services (that is, more time

_____

[5]Petitioners have not contended that Mr. Alfaro's factory work was performed in connection with a real property trade or business.

than he worked at the factory) in real property trades or businesses in which he materially participated during 2010.

Petitioners have not established this. They rely on a calendar book with handwritten notes of the time they spent performing services with respect to the rental properties, but that time totals only 256 hours (for both of them). Petitioners testified that Mr. Alfaro spent more time working at the properties than was recorded in the calendar book, but their testimony is simply too vague to support a finding that he spent approximately 1,400 hours more--as would be required to show that his time working at the properties exceeded his time working at his factory job. Petitioners' testimony emphasized that Mr. Alfaro took two weeks off from work in March 2010 to perform extensive repairs at one of the properties that tenants had damaged, but those hours appear fully accounted for in the calendar book.[6] As to any hours beyond that, petitioners testified that Mr. Alfaro typically left his factory job at 2:30 or 3 p.m. weekdays and went directly to one of the properties and spent weekends there as well. In order for Mr. Alfaro to have approximated 1,400 hours of rental-property-related work following this schedule in 2010, it would have been necessary for him to work at the rental properties 3

_____

[6]As noted in our findings, petitioners' calendar book recorded 114 hours of rental-property-related work for March 2010, an amount that is approximately four times greater than the hours recorded for any other month.

hours <u>every</u> weekday after work and 14 hours <u>every</u> weekend.[7] On this record, we are not persuaded that he did so. Because petitioners' evidence falls considerably short of demonstrating that Mr. Alfaro spent more than 1,680 hours during 2010 performing services with respect to the rental properties, he does not qualify for the section 469(c)(7)(B) exception and petitioners' rental real estate activities are deemed to be passive activities under section 469(c)(2).

In addition to the exception from the passive loss limitation for real estate professionals, there is an exception under which up to $25,000 in annual losses from rental real estate activities may be deducted (without regarded to the passive loss limitation) by individuals who "actively participated"[8] in the rental activity. <u>See</u> sec. 469(i)(1) and (2). This exception is fully phased out, however, when the taxpayer's adjusted gross income equals or exceeds $150,000, including taxpayers

---

[7]Our estimate treats Mr. Alfaro's two vacation weeks as accounted for and his week of sick leave as a week where he did not perform services at the rental properties. The estimate likewise assumes that Mr. Alfaro performed no significant rental-property-related work during the one week in 2010 during which the factory at which he worked was closed. We find that, had Mr. Alfaro spent that week working at the rental properties as he did during his two weeks of vacation, either he or Mrs. Alfaro would have recalled that fact and testified to it. They did not.

[8]The "active participation" standard is met as long as the taxpayer participated in a significant and bona fide sense in making management decisions or arranging for others to provide services such as repairs. <u>See</u> <u>Madler v. Commissioner</u>, T.C. Memo. 1998-112.

filing a joint return. See sec. 469(i)(3)(A). For this purpose, adjusted gross income is determined without regard to any passive activity loss or loss allowable under section 469(c)(7). Sec. 469(i)(3)(F)(iv). Disregarding petitioners' passive activity loss of $44,266 for 2010, their adjusted gross income is $171,425. Therefore, they are not entitled to deduct any passive activity losses under section 469(i).

We therefore sustain respondent's determination disallowing the $44,266 loss arising from petitioners' rental real estate activities in 2010.[9]

Accuracy-Related Penalty

Section 6662(a) and (b)(2) imposes a penalty equal to 20% of any underpayment of tax required to be shown on a return that is attributable to a substantial understatement of income tax. However, the section 6662(a) penalty is not imposed on any portion of an underpayment if the taxpayer shows there was reasonable cause for that portion of the underpayment and that he acted in good faith with respect thereto. Sec. 6664(c)(1). The determination of whether a taxpayer had reasonable cause and acted in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-

_____

[9]We note that petitioners are entitled to carry forward the disallowed loss and may be able to deduct it in subsequent tax years. See sec. 469(b), (g); Lowe v. Commissioner, T.C. Memo. 2008-298, 2008 WL 5396602, at *3.

4(b)(1), Income Tax Regs. Generally, the most important factor is the taxpayer's effort to assess his proper tax liability. Id. A taxpayer can show reasonable cause and good faith by showing that the taxpayer reasonably relied in good faith on professional advice regarding the taxpayer's return. Id. An honest misunderstanding of the law may be reasonable in view of the taxpayer's knowledge, education, and experience. Id. These factors, as well as the taxpayer's sophistication, are also considered in assessing the reasonableness of the taxpayer's reliance on professional advice. Sec. 1.6664-4(c)(1), Income Tax Regs.

On the facts and circumstances of this case, we conclude that petitioners had reasonable cause and acted in good faith with respect to the underpayment attributable to the disallowance of their rental real estate loss. Respondent conceded that petitioners fully substantiated all the expenses reported with respect to their rental properties. Petitioners hired a certified public accountant to prepare their return. Mrs. Alfaro was petitioners' point of contact with the accountant, and she testified that, on the basis of her discussions with the accountant, she believed that petitioners could claim deductions for substantiated expenses relating to their rental properties so long as they kept a log of the hours they performed services with respect to the properties. While it is unclear whether the accountant gave poor instructions or petitioners misunderstood those instructions, the fact remains

that the accountant prepared the return deducting the rental real estate loss. We are satisfied that, in keeping a log and fully substantiating their expenses, petitioners made a reasonable effort to comply with the law, and their reliance on the accountant to take the correct position with respect to the passive loss limitations was reasonable in these particular circumstances. Petitioners therefore had reasonable cause with respect to the underpayment on their return and are not liable for any penalty under section 6662.

To reflect the foregoing,

<u>Decision will be entered for respondent as to the deficiency in tax and for petitioners as to the accuracy-related penalty</u>.