T.C. Memo. 2018-109

UNITED STATES TAX COURT

PAUL O. MARTIN AND CYNTHIA M. MONTES MARTIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

PAUL O. MARTIN AND CYNTHIA M. MARTIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 15817-16, 5700-17.          Filed July 11, 2018.

Paul O. Martin and Cynthia M. Martin, pro sese.

<u>Evan K. Like</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  These cases were consolidated for purposes of trial,

briefing, and opinion.  The Commissioner determined deficiencies in petitioners'

[*2] Federal income tax and accuracy-related penalties under section 6662(a) as follows:[1]

| Year | Deficiency | Penalty sec. 6662(a) |
|------|------------|----------------------|
| 2012 | $7,892 | $1,578.40 |
| 2013 | 18,329 | 3,665.80 |
| 2014 | 18,344 | 3,668.80 |

The issues for decision are whether: (1) petitioners are entitled to certain expense deductions claimed on their Schedules E, Supplemental Income and Loss, in excess of those allowed by the Commissioner for 2012, 2013, and 2014; (2) loss deductions claimed on petitioners' Schedules E for 2012, 2013, and 2014 are subject to the passive activity loss limitations of section 469; (3) petitioners are entitled to unreimbursed employee expense deductions claimed on Schedules A, Itemized Deductions, for 2012, 2013, and 2014; and (4) petitioners are liable for accuracy-related penalties for 2012, 2013, and 2014.[2]

-----

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]At trial respondent objected to the introduction of Exhibits 4-J and 5-J attached to the stipulation of facts filed for docket No. 15817-16 and Exhibit 3-J attached to the stipulation of facts filed for docket No. 5700-17. We will issue a separate order overruling respondent's objections.

**[*3]**                                    FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of facts[3] and the attached exhibits are incorporated herein by this reference.

Petitioners resided in Indiana when they filed their petitions.

During the years in issue petitioner husband was employed full time as a salesman. He worked for Coperion Corp. (Coperion) in 2012 and 2013, and List, Inc. (List), in 2013 and 2014. Petitioner husband frequently traveled for business. Both Coperion and List had accountable reimbursement plans from which petitioner husband was eligible to be reimbursed for reasonable expenses that he paid in connection with his business-related travel. Petitioner wife was employed full time as an office manager for H & R General Contractors, Inc., where she worked at least 30 hours per week.

In addition to their full-time jobs, petitioners owned rental properties in Highland Heights, Kentucky. They purchased property at 15 Fifth Avenue in 2010, 3 Fifth Avenue in 2012, and 354 Knollwood Drive in 2013. Petitioners required their tenants to pay the utilities at the 3 Fifth Avenue and 354 Knollwood Drive properties, but petitioners paid the utilities at the 15 Fifth Avenue property where their son lived during the years in issue. Petitioners participated in their

---

[3]The parties filed a separate stipulation of facts for each case.

**[*4]** real estate endeavors by arranging for others to provide maintenance and repairs.

Petitioners timely filed a joint Federal income tax return for 2012 reporting adjusted gross income (AGI) of $113,874. With respect to their rental properties, petitioners reported rents received of $13,800 and expenses of $38,758 and claimed a loss deduction of $24,958. They claimed a deduction of $17,386 for unreimbursed employee expenses.

Petitioners timely filed a joint Federal income tax return for 2013 reporting AGI of $123,297. With respect to their rental properties, petitioners reported rents received of $24,300 and expenses of $77,316 and claimed a loss deduction of $53,016. They claimed a deduction of $17,750 for unreimbursed employee expenses.

Petitioners timely filed a joint Federal income tax return for 2014 reporting AGI of $130,608. With respect to their rental properties, petitioners reported rents received of $29,700 and expenses of $94,697 and claimed a loss deduction of $64,997. They claimed a deduction of $11,171 for unreimbursed employee expenses.

[*5]  Petitioners did not file an election with their 2012, 2013, or 2014 return to treat all interests in rental real estate as a single activity pursuant to section 469(c)(7)(A).

On April 15, 2016, the Commissioner issued petitioners a notice of deficiency for 2012 and 2013 and on December 8, 2016, issued petitioners a notice of deficiency for 2014.  The Commissioner disallowed all of petitioners' unreimbursed employee expenses for 2012-14 and disallowed various Schedule E expense deductions that petitioners attributed to their rental properties.  As a corollary to the Schedule E adjustments, the Commissioner decreased petitioners' net real estate losses.  He also determined that the remaining losses following the adjustments were passive but allowed petitioners to deduct rental real estate losses of $5,584 for 2012 and $1,205 for 2014.

Petitioners timely filed petitions with this Court.  At trial petitioners filed a motion for treating all rental real estate assets as one for the purposes of treating their separate real estate interests as a single activity.[4]  After trial respondent filed a motion to reopen the record to admit evidence that he complied with the supervisory approval requirement of section 6751(b) for the imposition of the accuracy-related penalties.  We denied his motion.

---

[4]For the reasons set forth below, we will deny petitioners' motion as moot.

**[*6]**                                            OPINION

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving that they are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The evidence does not establish that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice. Co. v. Helvering, 292 U.S. 435, 440 (1934). Section 6001 requires the taxpayer to maintain records sufficient to establish the amount of each deduction claimed. See also sec. 1.6001-1(a), Income Tax Regs.

Section 162(a) allows a deduction for ordinary and necessary expenses that a taxpayer pays in connection with the operation of a trade or business. Boyd v. Commissioner, 122 T.C. 305, 313 (2004). A trade or business expense is ordinary for the purposes of section 162 if it is normal or customary within a particular trade, business, or industry and is necessary if it is appropriate or helpful for the development of the business. Commissioner v. Heininger, 320 U.S. 467, 471-472

[*7] (1943); <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940).  In contrast, section 262(a) disallows deductions for personal, living, or family expenses.

If a taxpayer establishes that an expense is deductible but is unable to substantiate the precise amount, we may estimate the amount, bearing heavily against the taxpayer whose inexactitude is of his own making.  <u>See</u> <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930).  The taxpayer must present sufficient evidence for the Court to form an estimate because without such a basis, any allowance would amount to unguided largesse.  <u>Williams v. United States</u>, 245 F.2d 559, 560-561 (5th Cir. 1957); <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 742-743 (1985).

I.  <u>Rental Real Estate Expenses</u>

The Commissioner disallowed some of petitioners' claimed deductions attributable to their rental properties for lack of substantiation and others under section 280A.

A.  <u>Expenses Disallowed for Lack of Substantiation</u>

1.  <u>Auto and Travel</u>

The Commissioner disallowed auto and travel expense deductions of $9,185, $30,807, and $41,627 for 2012, 2013, and 2014, respectively.  Petitioners' auto and travel expenses are subject to the strict substantiation requirements of

[*8] section 274(d).  See secs. 274(d)(1), (4), 280F(d)(4)(A)(i).  Section 274 overrides the Cohan rule with regard to certain expenses and requires stricter substantiation for travel, meals, and certain listed property.  See Sanford v. Commissioner, 50 T.C. 823, 828 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  These strict substantiation rules require the taxpayer to substantiate with adequate records or sufficient evidence corroborating his own statement:  (1) the amount of the expense; (2) the time and place the expense was incurred; and (3) the business purpose of the expense.  Baylan v. Commissioner, T.C. Memo. 2017-140, at *7; sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Substantiation by adequate records requires the taxpayer to maintain an account book, a diary, a log, a statement of expense, trip sheets, or a similar record prepared contemporaneously with the use or expenditure and documentary evidence (e.g., receipts or bills) of certain expenditures.  See sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  A log that is kept on a weekly basis is considered contemporaneous for this purpose.  See sec. 1.274-5T(c)(2)(ii)(A), Temporary Income Tax Regs., 50 Fed. Reg. 46017-46018 (Nov. 6, 1985).  The

**[*9]** level of detail required for substantiating by adequate records the business use of listed property depends on the facts and circumstances of such use. See id. subdiv. (ii)(C), 50 Fed. Reg. 46018-46019.

To substantiate the auto expenses, petitioners submitted mileage logs. The logs for 2012 and 2013 appear to show how many miles petitioners traveled each week, but not the individual dates of travel or the places that they traveled to. The log for 2014 does not show the places petitioners traveled to. Accordingly, petitioners are not entitled to any of the disallowed auto expense deductions for 2012, 2013, or 2014.

Petitioners did not provide documentation for all of the travel expenses. The documentation they did provide consists of a smattering of receipts and credit card statements, none of which show the business purpose of the expenses. Additionally, petitioners appear to have reported an expense for a trip to Puerto Rico that seems entirely unrelated to their rental properties in Kentucky. Accordingly, petitioners are not entitled to any of the disallowed travel expense deductions for 2012, 2013, or 2014.

2. Utilities

The Commissioner disallowed a deduction of $5,206 for utilities expenses for 2014. Petitioners claim that they were required to pay the utilities under the

[*10] terms of a lease but they have not provided evidence or testimony regarding the lease or whether they actually paid the utilities expenses. Accordingly, petitioners are not entitled to a deduction of $5,206 for utilities expenses for 2014.

### 3. Management Fees

The Commissioner disallowed deductions of $310.51, $2,400, and $2,400 for management fees for 2012, 2013, and 2014, respectively. The only evidence of these expenditures is handwritten receipts that appear to have been drafted by petitioner wife, and petitioners did not provide any testimony to substantiate these expenses. The receipts are insufficient to substantiate them. Accordingly, petitioners are not entitled to deductions of $310.51, $2,400, and $2,400 for management fees for 2012, 2013, and 2014, respectively.

### 4. Cleaning and Maintenance

The Commissioner disallowed a deduction of $2,398.80 for cleaning and maintenance expenses for 2013. Petitioners were able to substantiate payments of: (1) $110 for plumbing services and (2) $80 for an appliance repair.

To substantiate the plumbing services expense, petitioners provided an invoice showing an amount paid of $110 and detailing the services provided. Therefore, petitioners are entitled to a deduction of $110 for the plumbing services.

**[*11]** To substantiate the appliance repair expense, petitioners provided an image of a canceled check from petitioner husband to Authorized Appliance Repair for $80 with a handwritten annotation stating "15 5th Ave".  Therefore, petitioners are entitled to a deduction of $80 for the appliance repair.

Petitioners have failed to substantiate the other reported cleaning and maintenance expenses.  For most of the other expenses, petitioners submitted handwritten receipts that appear to have been drafted by petitioner wife and canceled checks from petitioners' son's bank account.  The handwritten receipts do not prove that petitioners paid those reported expenses, and petitioners did not submit any evidence or testimony showing that they reimbursed their son for the payments from his account.  Petitioners are not entitled to any other deductions for cleaning and maintenance expenses for 2012, 2013, and 2014.

### 5.  Other Expenses

The Commissioner disallowed deductions of $2,391 for other expenses for 2014.  This amount consists of some combination of electrical expenses, a refrigerator, a heating and air conditioning service plan, a full size bed, a garage door, a maid, and amortization.  Petitioners have not provided any testimony or pointed to any substantiating documentation for these expenses.  Accordingly, we sustain the Commissioner's determinations as to other expenses for 2014.

**[*12]** B. Expenses Disallowed Under Section 280A

For 2012 the Commissioner disallowed utilities expenses of $4,999 and bathroom expenses of $4,325, and for 2013 he disallowed utilities expenses of $6,779. Petitioners attributed these expenses to the 15 Fifth Avenue property.

Section 280A disallows otherwise allowable deductions with respect to a dwelling unit used as a taxpayer's residence. Section 280A(d) provides that a taxpayer is considered to have used a dwelling unit as a residence for personal purposes for a number of days which exceeds the greater of 14 days or 10% of the number of days during which the property is rented at fair rent. Section 280A(d)(1) specifies that a dwelling unit may not be treated as rented at fair rental value for any day which the property is used for personal purposes. In general, a taxpayer is deemed to have used a dwelling unit for personal purposes if, during any part of a day, a member of the taxpayer's family (as defined in section 267(c)(4)) uses the unit for personal purposes. A member of the taxpayer's family includes his lineal descendants. Sec. 267(c)(4). However, a taxpayer is not treated as using the property for personal purposes for any period where the dwelling is rented to a family member for use as a personal residence at a fair rent. Sec. 280A(d)(3)(A).

**[\*13]** The parties stipulated that petitioners' son lived at 15 Fifth Avenue in 2012 and 2013.[5] Petitioners have not presented any evidence or testimony that their son was a rent-paying tenant. Accordingly, we sustain the Commissioner's determinations as to the expenses disallowed under section 280A for 2012 and 2013.

## II. Section 469

The Commissioner determined that petitioners' rental real estate losses were subject to the passive activity restrictions of section 469. In the case of an individual taxpayer, section 469 disallows any current deduction for a "passive activity loss". Sec. 469(a)(1), (b). A passive activity loss is the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year. Sec. 469(d)(1). A passive activity is any trade or business in which the taxpayer does not materially participate or any rental activity regardless of material participation. Sec. 469(c)(1) and (2).

Rental activities of a qualifying taxpayer in a real property trade or business (i.e., a real estate professional) are not per se passive activities. Sec. 469(c)(7)(A). If the taxpayer materially participates in the rental activities, then these activities

---

[5]The stipulation states: "Petitioners' son * * * resided at their rental property located at 15 5th Avenue in Highland Heights, Kentucky (15 5th Avenue), throughout 2012 and 2013."

[*14] are treated as nonpassive activities and the section 469(a) disallowance does not apply to that portion of the claimed loss deductions.  See Shiekh v. Commissioner, T.C. Memo. 2010-126, 2010 Tax Ct. Memo LEXIS 163, at *10.  A taxpayer qualifies as a real estate professional if he or she owns at least one interest in rental real estate and meets both requirements of section 469(c)(7)(B):

> (i) more than one-half of the personal services performed in trades or business by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

> (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

In the case of a joint return, the requirements to qualify as a real estate professional are satisfied if, and only if, either spouse separately satisfies the requirements.  Sec. 469(c)(7)(B).  Thus, if either spouse satisfies the requirements as a real estate professional, the rental activities of the real estate professional are not per se passive under section 469(c)(2).  See sec. 469(c)(7).

Petitioners rely on time logs to establish that they qualify as real estate professionals.  For 2012 and 2013 petitioners introduced time logs that purport to state the hours that petitioners participated in the rental real estate activities.  However, petitioners did not present any evidence or testimony regarding

**[*15]** petitioner husband's personal services devoted to his full-time jobs and did not present any evidence detailing the time petitioner wife devoted to the rental real estate activities. Therefore, neither petitioner can demonstrate that he or she individually devoted at least one-half of his or her personal services to the real estate activities, and we need not determine whether they materially participated. Accordingly, neither petitioner qualifies as a real estate professional for 2012 or 2013, and the Commissioner properly reclassified the rental real estate losses for those years as passive.

For 2014 petitioners submitted time logs that purport to state the hours spent on the real estate activity. However, the logs are unclear as to whether they account for petitioner wife's hours, petitioner husband's hours, or both. For 2014 the record is also silent with respect to the hours petitioner husband devoted to his full-time job. The parties stipulated to the hours petitioner wife devoted to her full-time job, which would provide us with a basis to determine whether she devoted half of her personal services for the year to the rental real estate activity. Because the log could reasonably account for petitioner husband's hours, we cannot determine that either petitioner devoted at least one-half of his or her personal services for 2014 to the rental real estate activities, and we need not determine whether either materially participated. Therefore, neither petitioner

[*16] qualifies as a real estate professional for 2014, and the Commissioner properly reclassified the rental real estate losses for 2014 as passive.

III. Relief Provided Under Section 469(i)

Pursuant to section 469(i), the Commissioner allowed petitioners to deduct rental real estate losses of $5,584 for 2012 and $1,205 for 2014.[6] In addition to the exception from the passive loss limitation for real estate professionals, there is an exception under which up to $25,000 in annual losses from rental real estate activities may be deducted (without regard to the passive loss limitation) by individuals who "actively participated" in the rental activity. See sec. 469(i)(1) and (2). The active participation standard can be satisfied without regular, continuous, and substantial involvement in an activity; the standard is satisfied if the taxpayer participates in a significant and bona fide sense in making management decisions (such as approving new tenants, deciding on rental terms, or approving capital expenditures) or arranging for others to provide services such as repairs. Madler v. Commissioner, T.C. Memo. 1998-112, 1998 Tax Ct. Memo LEXIS 111, at *11-*12. This exception is fully phased out, however, when the taxpayer's AGI equals or exceeds $150,000. For this purpose, AGI is determined

_____

[6]On brief respondent stated he was incorrect in allowing petitioners a loss for 2014 under sec. 469(i) because their AGI exceeded $150,000. Nevertheless, he conceded that petitioners are entitled to the deduction.

[*17] without regard to any passive loss or loss allowable under section 469(c)(7). Sec. 469(i)(3)(F)(iv).

For the first time on brief, respondent argues that petitioners did not actively participate in their rental real estate activities. We need not determine whether respondent is precluded from raising this issue on brief because we find that petitioners actively participated in the management of their properties by arranging repairs and purchasing supplies. Respondent does not dispute that petitioners' modified AGI was less than $150,000 for 2012. Thus, petitioners qualify for the section 469(i) exception for 2012.[7] They do not qualify for the exception for 2013 and cannot deduct passive losses beyond those respondent already allowed for 2014 because, disregarding their passive losses, their AGI exceeded $150,000 for both of those years.

## IV. Unreimbursed Employee Expense Deductions

Petitioners claimed deductions for unreimbursed employee expenses of $17,386, $17,750, and $11,171 for 2012, 2013, and 2014, respectively. Qualifying expenses under section 162 include expenses paid or incurred as an employee. Lucas v. Commissioner, 79 T.C. 1, 6 (1982). A taxpayer is entitled to

---

[7]The amount of the deduction will be determined in a Rule 155 computation and will account for the phase-out limitation of sec. 469(i)(3).

[*18] deduct unreimbursed employee business expenses under section 162(a) only to the extent that the taxpayer demonstrates that he could not have been reimbursed by his employer. Lucas v. Commissioner, 79 T.C. at 7.

Petitioners attributed most of the claimed unreimbursed employee expenses to petitioner husband's employment, but the parties stipulated that petitioner husband's employers "had in place at all relevant times so-called accountable reimbursement plans pursuant to which * * * [he] was eligible for reimbursement of the reasonable expenses he incurred in connection with his business related travel."[8] Petitioners did not submit any evidence detailing the precise terms of the reimbursement plans or offer testimony regarding what specific expenses were not eligible for reimbursement. Further, petitioners failed to substantiate that petitioner husband actually paid all of the expenses that they deducted.

Petitioners attributed the remaining unreimbursed employee expenses to petitioner husband's job search costs paid in 2013 and 2014. Petitioners provided a credit card statement showing that petitioner husband paid expenses in Swiss francs and paid $600 for an upgrade for a U.S. Airways flight. On the statement is a handwritten note that says: "job search costs". Petitioners also submitted a

---

[8]The quoted statement is from the stipulation of facts for docket No. 15817-16. The parties made an almost identical stipulation for docket No. 5700-17.

[*19] receipt for an $850 upgrade on a U.S. Airways flight that they contend is a job search cost. Petitioners provided no evidence or testimony explaining how these expenses related to a job search. Petitioners provided no evidence of any job search costs paid in 2014. Accordingly, petitioners are not entitled to any deductions for unreimbursed employee expenses for 2012, 2013, or 2014.

## V. Section 6662(a) Accuracy-Related Penalties

Section 6662(a) imposes a penalty of 20% on the portion of an underpayment attributable to any one of various factors, including "[n]egligence or disregard of rules or regulations" and "[a]ny substantial understatement of income tax." Sec. 6662(a) and (b)(1) and (2). Only one section 6662 accuracy-related penalty may be imposed with respect to any given portion of an underpayment, even if that portion is attributable to more than one type of conduct listed in section 6662(b). See New Phoenix Sunrise Corp. v. Commissioner, 132 T.C. 161, 187 (2009), aff'd, 408 F. App'x 908 (6th Cir. 2010); sec. 1.6662-2(c), Income Tax Regs. Under section 7491(c), the Commissioner bears the burden of production with respect to any liability of any individual for any penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner has met his burden of production, the burden of proof remains with the taxpayer,

[*20] including the burden of proving that the penalties are inappropriate. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

Compliance with section 6751(b)(1) is part of the Commissioner's burden of production for those penalties to which the section applies. See Graev v. Commissioner, 149 T.C. __, __ (slip op. at 13-14) (Dec. 20, 2017), supplementing and overruling in part 147 T.C. 460 (2016). Section 6751(b)(1) provides, subject to certain exceptions, that "no penalty shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate."

Respondent concedes that he must demonstrate compliance with section 6751(b)(1) to meet his burden of production. The record does not contain any evidence that respondent complied with section 6751(b)(1). Accordingly, respondent did not meet the burden of production, and petitioners are not liable for the accuracy-related penalty for 2012, 2013, or 2014. See Ford v. Commissioner, T.C. Memo. 2018-8.

In reaching our decisions, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

[*21] To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.